UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ONE OWNERSHIP INTEREST IN THE CLEVELAND INTERNATIONAL FUND - MEDICAL MART HOTEL, LTD HELD IN THE NAME OF WANG WEI, A/K/A JACK WANG SET TO MATURE IN 2020 AND PAY OUT $500,000.00,<br><br>$141,086.00 WIRED TO REEKAY TECHNOLOGY, HELD IN A BLOCKED FUNDS ACCOUNT,<br><br>Defendants *In Rem* | Civil Action No. 18-1697 (CRC) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AS TO *IN REM* DEFENDANTS**

On July 19, 2018, the plaintiff, the United States, commenced an action asserting civil forfeiture claims against two *in rem* defendants, to wit: One Ownership Interest in the Cleveland International Fund–Medical Mart Hotel, Ltd. Held in the Name of Wang Wei, a/k/a Jack Wang Set to Mature in 2020 and Pay Out $500,000.00 ("Defendant Property 1"), and $141,086.00 Wired to Reekay Technology, Held in a Blocked Funds Account ("Defendant Property 2") (collectively, "the *In Rem* Defendants"); and a claim for a civil money-laundering penalty against Wang Wei, a/k/a Jack Wang, 4-4-2301 Xinyi Jiayuan Congwenmen, Dongcheng Beijing, China ("Wang").[1]

---

[1] The United States' motion for Default Judgment is limited to the *In Rem* Defendants. Default Judgment as to the *In Personam* Defendants is not yet ripe.

*See* ECF 1. The action was filed pursuant to Federal Rule of Civil Procedure 55(b)(2) and 18 U.S.C. § 981(a) as to the *In Rem* Defendants, and pursuant to 18 U.S.C. § 1956(b) as to Wang.

The United States alleges, *inter alia*, that Wang and his co-conspirators violated the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.*; the smuggling statute, 18 U.S.C. § 554(a); the conspiracy statute, 18 U.S.C. § 371; and the money laundering statute, 18 U.S.C. §§ 1956(a)(2)(A) and (h). The Clerk of the Court entered default against the *In Rem* Defendants on June 24, 2019. This matter is now ripe for entry of a default judgment; specifically, the United States requests forfeiture of the *In Rem* Defendants.

## FACTUAL BACKGROUND

This action arises out of an investigation by the Federal Bureau of Investigation ("FBI") into a scheme operated by Wang to launder U.S. dollars through the United States and China on behalf of sanctioned entities in the Islamic Republic of Iran ("Iran"). On November 12, 2015, the United States Department of Commerce, which is located in Washington, D.C., named Wang and several front companies with which he is affiliated, including Sky Rise Technology Ltd.; TiMi Technologies Co. Ltd.; 32 Group China Ltd.; Caprice Group Ltd.; and Reekay Technology, on its "Entity List." *See* ECF 1 ¶¶ 31-32. The Department of Commerce manages the entity list, which names individuals and corporate entities subject to enhanced regulation when transacting business with American companies. *Id.* ¶ 31. The Department of Commerce places individuals and companies on the Entity List when they present a risk of participating in programs assisting in the proliferation of weapons of mass destruction; terrorist; or other activities adverse to U.S. interests. *Id.*

The Department of Commerce placed Wang and his affiliated companies on the Entity List because they transacted with individuals associated with the Iranian defense industry and others

associated with Specifically Designated Nationals list ("SDNs") monitored by the Department of Treasury's Office of Foreign Asset Control ("OFAC"). *See id.* ¶¶ 31-34. On March 21, 2017, the Department of State imposed sanctions against Wang and one of his companies, Sky Rise Technology (also known as Reekay Technology Limited), for transferring goods to Iranian defense entities in violation of the Iran, North Korea, and Syria Nonproliferation Act ("INKSA"). *Id.* ¶ 34.

Further investigation has revealed that Wang has been in contact with OFAC designated individuals and entities. This includes Fanavari Moj Khavar ("Fana Moj"), an Iranian company that supports the Islamic Revolutionary Guard Corps. OFAC first designated the Islamic Revolutionary Guard Corps on October 25, 2006 for assisting in the administration of the Iranian military's missile systems. OFAC designated the Islamic Revolutionary Guard Corps (again) and Fana Moj on October 13, 2017. OFAC designated the Islamic Revolutionary Guard Corps for its role in Iranian terrorism activity, and designated Fana Moj for supporting the Islamic Revolutionary Guard Corps. *Id.* ¶ 35.

Wang conducted transactions with Iranian parties through Sky Rise Technology (or Reekay Technology), a front company based in Hong Kong, and 32 Group China Ltd., a front company based in China. *See id.* ¶¶ 37-42. Those transactions include at least $1,108,022.27 in wire transfers in offshore accounts operating in U.S. dollars, the purpose of which was to re-export items from U.S.-based manufacturers, distributors, and telecommunications companies to Iranian entities without obtaining the required licensure from OFAC. *Id.* ¶¶ 43-46. Many of those transfers involved companies specializing in the manufacture of electronic components, several of which are involved in the nuclear, aerospace, and defense industries. *Id.* ¶ 47. Wang made many payments from his personal bank accounts on behalf of the front companies, which is one among

many indications that Sky Rise Technology and 32 Group China Ltd. are front companies operating for Wang's benefit in violating the OFAC-imposed sanctions. *Id.* ¶ 43.

<u>Involvement of Defendant Property 1</u>

The EB-5 visa, or EB-5 immigrant investor visa program, provides a method for eligible immigrant investors to become lawful permanent residents by investing at least $1,000,000 to finance a business in the United States that will employ at least ten American workers, or $500,000 to finance a business in a targeted employment area in the United States that will employ at least ten American workers. The Cleveland International Fund is an Ohio-based regional center offering foreign nationals the opportunity to make investments in the United States for the ultimate purpose of obtaining U.S. permanent residency status through the EB-5 investment visa program. Wang invested in the Medical Mart Hotel project, an Ohio-based project which the Cleveland International Fund manages. *Id.* ¶¶ 49-51. To become an investor in the project, Wang purchased a membership unit from the Cleveland International. *Id.* at ¶¶ 51-52.

Wang's contribution, which totaled $545,000 (including a $45,000 administrative fee that has since been dissipated), constituted a part of a $36,000,000 bond the Cleveland International Fund used to begin construction on a hotel project. <u>Id.</u> at ¶¶ 53-55. The Bond agreement reads:

> This Bond is one of a duly authorized issue of revenue bonds of the Authority designated First Mortgage Lease Revenue Bonds, Series 2011 (Optima 777, LLC Hotel Project) (the "Series 2011 Bonds") issued under the Amended and Restated Trust Indenture of even date herewith (the "Indenture"), between the Authority and the Trustee, and aggregating in principal amount $36,000,000. The Series 2011 Bonds are issued for the purpose of: financing costs of demolishing, rehabilitation, constructing, equipping, installing, furnishing, improving and developing real and personal property, or a combination thereof, comprising "port authority facilities" as defined in Section 4582.01, Ohio Revised Code, constituting a hotel facility (the "Project") to be owned by Issuer, through a Ground Lease, and leased to Lessee. The facilities included in the Project will be demolished, rehabilitated, constructed, equipped, installed,

> furnished, improved and developed pursuant to the Lease and
> Construction Agency Agreement dated of even date with the
> Indenture (the "Construction Agency Agreement") between the
> Authority and Lessee, as an independent contractor and agent of the
> Authority (together with its successors and any permitted assigns as
> such agent, the "Construction Agent").

Amended Restated Bond. No. R-71-A, Pg. 3. An agreement between Wang and the Cleveland

International Fund further states that the Cleveland International Fund may

> use Wang's funds to gain a membership unit in the Cleveland
> International Fund - Medical Mart Hotel, Ltd., which would result
> in the wiring of the principal plus any accrued interest after
> completion of the bond. The agreement states: "The Subscriber's
> Capital Contribution will be held in escrow pursuant to a separate
> escrow agreement among the Escrow Agent, the Subscriber, and the
> Company until the USCIS [U.S. Citizenship and Immigration
> Services] i) approves the Subscriber's I-526 Petition (in which case
> the Company will direct the Escrow Agent to release the Capital
> Contribution to the Company and, upon receipt of the Capital
> Contribution, the Subscriber will be admitted as a Member of the
> Company).

Wang notified U.S. authorities that he wished to withdraw from the EB-5 visa program on

September 19, 2016, shortly after the Department of Commerce placed Wang on the Entity List.

*Id.* ¶ 57. Wang's $500,000 investment in support of that application, however, is set to mature in

2020, and will result in a payout to Wang at that time. *Id.* at ¶ 58. The United States seeks forfeiture

of Wang's interest in the Cleveland International Fund because his interest was purchased with

funds laundered into the United States financial system as a result of his scheme to violate IEEPA

and INKSA.

Defendant Property 2

As noted above, the Departments of Commerce and State sanctioned Reekay Technology

for its role as a front company for illegal re-export of goods to Iran. *Id.* ¶ 60. On February 4, 2015,

a Chinese Front Company attempted to wire $141,086.00 (Defendant Property 2) to Reekay

Technology. *Id.* ¶ 62. The U.S. intermediary bank stopped this transaction pursuant to a OFAC blocking order because the transaction violated U.S. sanction. The bank has since kept Defendant Property 2 in a blocked funds account. *Id.*

The Chinese Front Company in the blocked transaction maintains no valid business purpose, does not export U.S.-originating goods, and has little-to-no public presence. *Id.* ¶¶ 63-66. Companies like the Chinese Front Company are commonly used by Iranian procurement agents. *Id.* ¶ 66.

## PROCEDURAL HISTORY

On July 19, 2018, the Government filed its Verified Complaint for Forfeiture *In Rem. See* ECF 1. On July 20, 2018, the Clerk of the Court entered a Warrant for Arrest In Rem. *See* ECF 2.

On October 29, 2018, the United States commenced notification of the forfeiture action against Defendant Property 1 via publication on an internet site, http://www.forfeiture.gov, for 30 consecutive days.[2] *See* ECF 4. Claims as to Defendant Property 1 based on publication were due by December 28, 2018. *See* Supp. Rule G(5)(a)(ii); ECF 4. On October 29, 2018, the United States commenced notification of the forfeiture action against Defendant Property 2 via publication on the same internet site for 30 consecutive days. ECF 3. Claims as to Defendant Property 2 based on publication were due by December 28, 2018. *See* Supp. Rule G(5)(a)(ii); ECF 3. No party filed a claim based on publication, and the time to do so has expired. *See* ECF 5 at pg. 3.

---

[2] The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") govern civil forfeiture actions *in rem* arising from a federal statute. *See* Supplemental Rule A(1)(B). The Federal Rules of Civil Procedure also apply, except to the extent they are inconsistent with the Supplemental Rules. *See* Supp. Rule A(2). Supplemental Rule G(4) governs the process by which the Government must serve notice of the Complaint. Notice is required to be provided to the public via publication, as well as to potential claimants via direct notice. Supp. Rule G(4).

In addition to this public notice, the United States identified potential claimants in China.[3] U.S. law enforcement officials effected service on those entities, by sending notice via international package service on or about July 20, 2018. *See* ECF 5 at pg. 2. The deadline for potential claimants who received direct notice to file a verified claim was December 28, 2018. *Id.* This deadline passed without any potential claimants filing a claim. *Id.*.

On June 24 2019, the Clerk of the Court entered default as to the *In Rem* Defendant. *See* ECF 7; Fed. R. Civ. P. Rule 55(a) (clerk must enter default when a party has failed to plead or otherwise defend). This matter is now ripe for entry of default judgment against the *In Rem* Defendants.

## STANDARDS FOR ENTRY OF DEFAULT JUDGMENT

In cases where the claim is not a "sum certain," or a sum that can be computed with certainty, the party seeking a default judgment must apply to the court. Fed. R. Civ. P. 55(b)(2);[4] *Canady v. Erbe Elektromedizin GMBH*, 307 F. Supp. 2d 2, 8-9 (D.D.C. 2004); *United States v. Gant*, 268 F. Supp. 2d 29, 32 (D.D.C. 2003). The court has the power to enter default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." Fed. R. Civ. P. 55(a); *Int'l Painters & Allied Trades Indus. Pension Fund v. Zak Architectural Metal & Glass, LLC*, 635 F. Supp. 2d 21, 23 (D.D.C. 2009) (citing *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 375 n. 5 (D.C. Cir.1980)). This authority applies equally in the context of a civil forfeiture action. *See, e.g., United States v.*

---

[3] Supplemental Rule G also requires that the government send direct notice "to any person who reasonably appears to be a potential claimant on the facts known to the government." Supp. Rule G(4)(b)(i).

[4] A default judgment cannot be entered against an unrepresented minor or incompetent person, *see* Fed. R. Civ. P. 55(b)(2), but neither exception applies to the *In Rem* Defendants. *See* Complaint (ECF 1) at ¶ 10.

*$23,000 in U.S. Currency*, 356 F.3d 157, 163 (1st Cir. 2004) (Rule 55 applies equally in the civil forfeiture context). Default judgment is available "when the adversary process has been halted because of an essentially unresponsive party . . . [as] the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

Although there is a general policy favoring decisions on the merits, if potential claimants fail to respond to a complaint, "a decision on the merits is impractical, if not impossible." *United States v. Approximately $45,860 in U.S. Currency*, No. 14-CV-03801-JCS, 2015 WL 1387468, at *4 (N.D. Cal. Mar. 24, 2015). "A denial of default judgment would prejudice the government in that it would be required to expend further time and effort in an action where no claimants [] have appeared. Without a default judgment, the government may be without recourse altogether." *United States v. Real Prop. & Improvements Located at 929 Clay St., Unit #7, San Francisco, CA*, No. 15-cv-00010, 2015 WL 3547256, at *3 (N.D. Cal. June 5, 2015).

The court's primary inquiry when considering default is whether notice has been adequately served, and if any party filed a timely claim. *See United States v. $4,620 in U.S. Currency*, 779 F. Supp. 2d 65, 67 (D.D.C. 2011) (concluding that default was appropriate because the government "provided sufficient notice of the seizure of the defendant property," and no party filed a timely claim); *see also United States v. Remington, Model 58, 12 Gauge Shotgun*, No. 1:11-CV-330, 2012 WL 1466684, at *1 (E.D. Tex. Feb. 7, 2012), report and recommendation adopted, No. 1:11-cv-330, 2012 WL 1466682 (E.D. Tex. Apr. 26, 2012) (holding that default judgment entered upon showing government's compliance with Supplemental Rule G(4)); *United States v. 1999 Lexus GS400*, No. C 05–1139, 2007 WL 1056791, *2-3 (N.D. Cal. 2007) ("Default may be

entered upon a showing that: (a) notice has been given as required by Admiralty Local Rule 6–1; (b) the time to answer has expired; and (c) no one has appeared to claim the property.").

Assuming proper notice, the court's second consideration before entering default judgment is whether the complaint establishes a reasonable belief of forfeitability. *See United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*, No. 17-cv-01166, 2018 WL 3949962, at *4 (D.D.C. June 29, 2018) (*citing United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 571 F. Supp. 2d 1, 16 (D.D.C. 2008), report and recommendation adopted, No. 17-cv-1166, 2018 WL 3941949 (D.D.C. Aug. 15, 2018). "Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint." *Boland v. Smith & Rogers Constr. Ltd.*, 201 F. Supp. 3d 144, 147 (D.D.C. 2016); *see also Int'l Painters & Allied Trades Indus. Pension Fund v. Dettrey's Allstate Painting, LLC*, 763 F. Supp. 2d 32, 34 (D.D.C. 2011) (same) (citing *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (same)). A court must treat "the factual allegations in a complaint, other than those as to damages . . . as conceded by the defendant." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir.2005); *see also Int'l Painters & Allied Trades Indus. Pension Fund v. R. W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002) (the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint" upon entry of default by the clerk) (citation omitted).

## **ARGUMENT**

### I.     **The United States Is Entitled To Entry Of A Default Judgment Against The *In Rem* Defendants**

In this case, the Clerk of Court properly entered default against the *In Rem* Defendants pursuant to Rule 55(a), *see* ECF 7, upon the United States' showing that no party pled or otherwise defended this action, *see* ECF 6. Moreover, the well-pleaded allegations of the Complaint establish

*prima facie* forfeitability of the *In Rem* Defendants, valued at $500,000.00 and $141,086.00, respectively.

    A.  <u>The United States has satisfied its notice obligations to these defendants.</u>

    "Reasonable notice" requires only that the government attempt to provide actual notice, but it does not require proof that the notice was received. *See Valderrama v. United States*, 417 F. 3d 1189, 1197 (11th Cir. 2005); *United States v. Funds Up to & including the Amount of $56,634 in U.S. Currency on Deposit in Banesco Int'l, Panama,* 79 F. Supp. 3d 112, 114 (D.D.C. 2015) (notice was adequate based on public notice on the government's forfeiture website). Where "the government attempted to provide notice and heard nothing back indicating that anything had gone awry, courts have found the government's efforts comply with due process." *Lewis v. United States*, No. 14-cv-496, 2014 WL 6065538, at *6 (S.D. Cal. Nov. 3, 2014) (citing *Jones v. Flowers,* 547 U.S. 220, 226 (2006)). *See also* Supp. Rule G(4)(b)(iv) ("[a] potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice"). In this case, the United States satisfied its notice obligations by publishing its action on the government's forfeiture website and by mailing direct notice to Wang at this three known addresses. Wang used these three addresses in his business dealings, including in contracts and payment invoices. The notice packet was successfully delivered to Wang's business address for Reekay Technology on or about July 26, 2018. *See* Attachment A.

    B.  <u>Default judgment is appropriate because the Complaint provides a well-pleaded basis for relief.</u>

    The well-pleaded facts in the United States' Complaint establish a reasonable belief of forfeitability on which the Court may enter judgment. As noted above, the *In Rem* Defendants are properties associated with Jack Wang, whose companies the Department of Commerce and

Department of State sanctioned for violating, *inter alia*, INKSNA and IEEPA. Additionally, Defendant Property 2 was the subject of an OFAC blocking order, because it violated U.S. sanctions on Iran. This Court may take judicial notice of such actions. *See Youkelsone v. FDIC*, 910 F. Supp. 2d 213, 221 (D.D.C. 2012), *aff'd* 560 F. App'x 4 (D.C. Cir. 2014) ("In deciding a motion under Federal Rule of Civil Procedure 12(b)(6), a court may take judicial notice of public records from other proceedings," citing *Covad Commc'ns Co. v. Bell Atl. Co.,* 407 F. 3d 1220, 1222 (D.C. Cir. 2005)); *see also EEOC v. St. Francis Xavier Parochial Sch.*, 117 F. 3d 621, 624 (D.C. Cir.1997) (concluding that, on motion to dismiss, the court may consider "matters of which [it] may take judicial notice"). Indeed, a finding by federal authorities that a company has violated sanctions by financially supporting a designated entity is entitled to deference. *See In re 650 Fifth Ave.*, No. 08-cv-10934, 2013 WL 2451067, at *5–6 (S.D.N.Y. June 6, 2013). OFAC, the Department of State, and the Department of Commerce have "been delegated the authority to administer the [sanction] regime, and the Court must therefore give effect to [their] informal adjudications, unless they are 'plainly inconsistent' with the relevant statutes and [] regulations." *Id.* ; *see also Consarc Corp. v. Iraqi Ministry.* 27 F. 3d 695, 702 (D.C. Cir. 1994), citing *Chevron U.S.A. Inc. v. NRDC,* 467 U.S. 837, 844–45 (1984). Given the Department of Commerce's, Department of State's, and OFAC's unique expertise in matters of terrorist financing and the sensitive nature of the investigations upon which they make their determinations, they are "entitled to deference even greater than that afforded an administrative agency statutory interpretation under *Chevron." See In re 650 Fifth Ave.*, 2013 WL 2451067, at *5–6; *see also Holy Land Found. for Relief & Dev. v. Ashcroft,* 219 F. Supp. 2d 57, 68 (D.D.C. 2002) *aff'd,* 333 F. 3d 156 (D.C. Cir. 2003) (concluding that OFAC's interpretation of "legally enforceable interest" is entitled to deference). The designation of Sky Rise Technology a/k/a Reekay Technology and 32 Group

China Ltd. creates a factual predicate for a reasonable belief that those companies and any associated entities acted exclusively for the benefit of sanctioned Iranian entities.

Moreover, the facts, which must be taken to be true, sufficiently plead a reasonable belief of forfeitability, because the United States has specified:

- the perpetrators of the IEEPA and money laundering conspiracy (Wang and his related companies), *see e.g.,* ECF 1 at ¶¶ 37-48;

- the victim of the conspiracy (the United States), *see e.g., id.* at ¶ 33;

- the goal of the conspiracy (to allow Iranian entities to procure technologies in violation of the various applicable sanctions, and for Wang and his related front companies to illegally access the U.S. financial system), *see e.g., id.* ¶¶ 49-67;

- the means of effectuating the goals (wire payments to specific parties, without first seeking the requisite license from regulators), *see e.g., id.* at ¶ 48; and

- which members of the conspiracy were responsible for facilitating which wire payments (Wang and his companies for acting as Iranian financial and procurement facilitators and laundering payments to third parties), *see e.g., id.*

*See United States v. All Assets Held In Account No. XXXXXXXX*, 83 F. Supp. 3d 360, 373 (D.D.C. 2015) (concluding that the complaint sufficiently pled a reasonable belief of forfeitability, because the government specified the victim of the alleged fraud; the perpetrators of the alleged fraud; the goal of the fraud; the means of effectuating the fraud; and which members of the fraud were responsible for which acts).

Taking the facts of the Complaint as true, the United States has established that Wang entered into agreements with parties known (*i.e.*, Fana Moj) and unknown to commit offenses (*i.e.*, violations of IEEPA and the money laundering statute) against the United States; and that Wang's

surreptitious activities, including his use of multiple front companies, his transactions with Iranian financial facilitators such as Fana Moj, and concealment of Iranian entities as the true beneficiary of his wire payments and transactions demonstrate Wang's knowledge that his activities promoted his and others' violations of IEEPA and money laundering laws. Thus, the United States has established a violation of the conspiracy statute, 18 U.S.C. § 371, and the money laundering conspiracy statute, 18 U.S.C. § 1956(h). *See United States v. Trie*, 23 F. Supp. 2d 55, 59 (D.D.C. 1998) ("The essential elements of a conspiracy charge are (1) an agreement among two or more persons, (2) either to commit an offense against the United States or to defraud the United States, (3) with knowledge of the conspiracy and with actual participation in it, where (4) one or more of the co-conspirators takes any overt act in furtherance of the conspiracy."); *United States v. Cobble*, No. 13-cr-200 (RWR), 2015 WL 5173887, at *2 (D.D.C. Sept. 2, 2015) (government must show defendant: "(1) agreed to commit a money laundering offense, and (2) knowingly and voluntarily participated in that agreement.") (internal citation omitted).

Moreover, the facts in the Complaint satisfy the elements of a substantive civil IEEPA violation. Wang wired over one million dollars, which transited through the United States, for the benefit of sanctioned Iranian entities, without having first obtained a license from OFAC, knowing that such license was needed. Wang's knowledge is again demonstrated by his activities to conceal the true nature of his transactions (i.e., establishing and using front companies and concealing the true beneficiary of their wire payments). Such actions violate IEEPA. *See United States v. Quinn*, 403 F. Supp. 2d 57, 65 (D.D.C. 2005) (elements of IEEPA are: (1) an illegal export or provision of financial services; (2) failure to obtain the necessary license from OFAC; (3) the defendant acted knowingly and willfully; and (4) the defendant knew that a license was required). The bar for the forfeiture of proceeds of an IEEPA violation is lower in the civil context, as willfulness is

not a civil element. *See United States v. All Funds on Deposit in United Bank of Switzerland*, 2003 WL 56999, at *6-7 (S.D.N.Y. Jan. 7, 2003) (Rakoff, J.) (concluding that willfulness is not required in civil forfeiture of IEEPA proceeds). This is because the definition in 18 U.S.C. § 1956(c)(7)(D), which incorporates forfeiture, ties IEEPA to violations of "section 206," which incorporates both civil and criminal violations of IEEPA. Section 206 states that while criminal violations of IEEPA require willfulness, civil violations do not.

The *In Rem* Defendants are subject to forfeiture based on this violation of IEEPA. 18 U.S.C. § 981(a)(1)(C) mandates the forfeiture of property derived from or constituting proceeds of violations of Section 206 of IEEPA (which is defined as a specified unlawful activity in 18 U.S.C. § 1956(c)(7)(D)) and for a conspiracy to violate such law. Wang caused the wiring of the *In Rem* Defendants, which transited through the United States as part of the above-described scheme. The *In Rem* Defendants are forfeitable because the investigation revealed that Wang's only source of income was from the above-described scheme. *See U.S. v. Betancourt*, 422 F.3d 240, 251-51 (5th Cir. 2005) (determining that if drug dealer had no legitimate income, winning lottery ticket is traceable to his drug proceeds)).

In fact, tracing of the Defendant Properties to specific sales to Iran is unnecessary. Pervasive criminal wrongdoing by a business obviates the need for tracing in forfeiture actions. That is, when a business is "used as a vehicle to commit fraud" and "that fraud touched everything," all "items connected to [the business's] revenue stream are subject to forfeiture." *United States v. Smith*, 749 F.3d 465, 488-89 (6th Cir. 2014); *see also United States v. Lang*, No. 1:12-CR-104, 2015 WL 4207109, at *2 (E.D. Tenn. July 10, 2015) (finding that when "vast majority" of business's proceeds comes from illegal activity, government can forfeit "entirety" of the proceeds even if the business was not "a wholly illegitimate enterprise") (emphasis added). In

*United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010), the Sixth Circuit held that "the entirety" of a company's revenue was forfeitable, "including money generated through supposedly legitimate transactions," because even legitimate sales "resulted 'directly or indirectly' from a conspiracy to commit fraud." *Id.* at 332; *see also United States v. Torres*, 703 F.3d 194, 199 (2d Cir. 2012) ("so long as there is a causal nexus between the wrongdoer's possession of the property and her crime, the property may be said to have been 'obtained' by her 'indirectly' as a result of her offense . . . the forfeiture statute envisions and tolerates some attenuation of the chain of events between the crime and the related property or gain it makes subject to forfeiture."). The factual allegations in the complaint and related sanctioning of Wang and his businesses demonstrate that his businesses were "used as a vehicle to commit fraud" and "that fraud touched everything," all "items connected to [the business's] revenue stream are subject to forfeiture." *Smith*, 749 F.3d at 488-89. Specifically, the complaint noted that from 2011 to in or about December 2015, Wang and his front companies originated wire transfers from offshore U.S. dollar accounts worth more than $1,108,022.27. See ECF 1 at ¶ 44. The Complaint documented that these payments were involved in the illegal export scheme, as Wang failed to seek the requisite licensure from U.S. regulators. *See id.* at ¶¶ 43-48.

The facts in the Complaint also satisfy the elements of a substantive money laundering violation. To prove a violation of 18 U.S.C. § 1956(a)(2)(A), the government must show the movement of funds across the border of the United States, which promoted the carrying on of a specified unlawful activity (i.e., IEEPA and 18 U.S.C. § 554(a)). *See United States v. Piervinanzi*, 23 F.3d 670, 680 (2d Cir. 1994). The United States need not prove that the funds involved in the transaction are illicit, because Congress excised the term "proceeds" from this provision. *See id.* The same facts cited above in support of a civil IEEPA violation demonstrate that Wang knowingly

conducted cross-border payments which promoted violations of IEEPA and 18 U.S.C. § 554(a).

Thus, the United States has established a violation of the money laundering statute, 18 U.S.C.

§ 1956(a)(2)(A).

Pursuant to 18 U.S.C. § 981(a)(1)(A), the government may forfeit "any property"

"involved in" or "traceable to" the above-described § 1956(a)(2)(A) and (h) violations. *In re 650*

*Fifth Ave.*, No. 08.-cv-10934, 2013 WL 5178677, at *30 (S.D.N.Y. Sept. 16, 2013), *vacated and*

*remanded sub nom. on other grounds* (*In re 650 Fifth Ave. & Related Properties*, 830 F.3d 66 (2d

Cir. 2016)). Money laundering forfeiture pursuant to § 981(a)(1)(A) "provides, therefore, for

broader forfeiture than 18 U.S.C. 981(a)(1)(C), the IEEPA forfeiture provision." *Id*. "The pleading

standard for tracing funds in a civil forfeiture complaint is not exacting . . . [as] the D.C. Circuit

has held that the Government is not required to demonstrate full tracing of all account activity to

prove money laundering under 18 U.S.C. § 1956." *All Assets Held In Account No. XXXXXXXX*,

83 F. Supp. 3d at 379 (considering tracing at the motion to dismiss stage) (citing *United States v.*

*Braxtonbrown–Smith*, 278 F.3d 1348, 1354 (D.C. Cir. 2002) (tracing is unnecessary because of

the "realities about the nature of money as a fungible commodity"). "Congress's use of the word

'involve'" obviates "the requirement that the government trace the origin of all funds deposited

into a bank account to determine exactly which funds were used for what transaction."

*Braxtonbrown-Smith*, 278 F.3d at 1355 (citing *United States v. Jackson*, 935 F.2d 832, 840 (7th

Cir. 1991)). Thus, the *In Rem* Defendants, which came from Wang's bank accounts, are funds

involved in Wang's scheme, and subject to forfeiture as such.

## CONCLUSION

For the foregoing reasons, and, upon consideration of the record in this case, including a

showing of compliance with applicable rules regarding service of process and notice by

publication, the default entered by the Clerk of the Court, and taking the well-pleaded allegations of the Complaint as true, the United States respectfully requests that its motion for entry of default judgment be granted. *See United States v. 8 Gilcrease Lane, Quincy, Fla. 32351*, 638 F.3d 297, 299 (D.C. Cir. 2011) (upholding district court's order for default judgment and final order of forfeiture, because there were no valid claims); *United States v. $9,928.00 in U.S. Currency*, 10-cv-1728, 2012 WL 1004873, at *1 (D.D.C. Mar. 27, 2012) (ordering default where government submitted affidavit certifying that it gave appropriate notice and that no claims were filed); *United States v. $4,620 in U.S. Currency*, 779 F. Supp. 2d 65, 67 (D.D.C. 2011) (ordering default where court struck sole claimant's claim, leaving no claimants to the defendant funds). As reflected in the proposed order accompanying the Motion, the United States asks specifically that the Court order the *In Rem* Defendants, valued at $500,000.00 and $141,086.00, respectively, be forfeited to the United States.

Respectfully submitted,

JESSIE K. LIU, D.C. Bar No. 472845
United States Attorney for the District of Columbia

By:      _____/s/_____
Zia M. Faruqui, D.C. Bar No. 494990
Assistant United States Attorney
Chris Kaltsas, N.J. Bar No. 158592016
Special Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
zia.faruqui@usdoj.gov
(202) 252-7117 (Faruqui)

November 17, 2019                    *Attorneys for the United States of America*

17